# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
04/18/2022
CT Log Number 541420154

TO: LEGAL DEPARTMENT - SOP
TESLA, INC.
901 PAGE AVE
FREMONT, CA 94538-7341

RE: **Process Served in California**

FOR: Tesla, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: CHRISTOPHER HINZE // To: Tesla, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Notice(s), Certificate, Complaint, Attachment(s), Cover Sheet |
| **COURT/AGENCY:** | Alameda County, Superior Court of California, CA<br>Case # 22CV009439 |
| **NATURE OF ACTION:** | Product Liability Litigation - Lemon Law - 2017 Tesla Model S |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/18/2022 at 09:38 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 calendar days after this summons and legal papers are served on you (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | David C. Wright<br>MCCUNE WRIGHT AREVALO LLP<br>3281 E. Guasti Road, Suite 100<br>Ontario, CA 91761<br>909-557-1250 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/18/2022, Expected Purge Date: 04/23/2022<br><br>Image SOP<br><br>Email Notification,  LEGAL DEPARTMENT - SOP  legalsop@tesla.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Mon, Apr 18, 2022
**Server Name:**                             DROP SERVICE

| Entity Served | TESLA INC |
|---|---|
| Case Number | 22CV009439 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** ~~TESLA, INC.~~, a Delaware Corporation; and
*(AVISO AL DEMANDADO):* DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** Christopher Hinze
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
**04/04/2022**
Chad Finke, Executive Officer / Clerk of the Court
By: _____ C. Clark _____ Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Alameda<br>24405 Amador Street<br>Hayward, California  94544 | CASE NUMBER:<br>*(Número del Caso):*<br>**22CV009439** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: David C. Wright
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
MCCUNE WRIGHT AREVALO LLP
3281 E. Guasti Road, Suite 100, Ontario, California 91761                          909-557-1250

DATE:                                        Chad Finke, Executive Officer / Clerk of the Court                                    , Deputy
*(Fecha)* 04/04/2022                        *(Secretario)* _____ C. Clark _____ *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

COURTHOUSE ADDRESS:
Hayward Hall of Justice
24405 Amador Street, Hayward, CA 94544

PLAINTIFF:
Christopher Hinze

DEFENDANT:
Tesla, Inc.

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda

*04/07/2022*

Chad Finke , Executive Officer / Clerk of the Court

By: _Molly Kautz_ Deputy
M. Kautz

**NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER:
22CV009439

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

| | | | |
|---|---|---|---|
| Date: 08/11/2022 | Time: 1:30 PM | Dept.: 517 | |
| Location: Hayward Hall of Justice | | | |
| 24405 Amador Street, Hayward, CA 94544 | | | |

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/07/2022<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Molly Johnson_ Deputy<br>M. Kautz |
| PLAINTIFF/PETITIONER:<br>Christopher Hinze | |
| DEFENDANT/RESPONDENT:<br>Tesla, Inc. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CV009439 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

David Wright
McCune Wright Arevalo, LLP
3281 E. Guasti Road Suite 100
Ontario, CA 91761

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/07/2022                                    By:

_Molly Johnson_

M. Kautz, Deputy Clerk

**CERTIFICATE OF MAILING**

1 | Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
2 | David C. Wright (State Bar No. 177468)
dcw@mccunewright.com
3 | Steven A. Haskins (State Bar No. 238865)
sah@mccunewright.com
4 | Mark I. Richards (State Bar No. 321252)
mir@mccunewright.com
5 | **McCUNE WRIGHT AREVALO, LLP**
3281 E. Guasti Road, Suite 100
6 | Ontario, California 91761
Telephone:    (909) 557-1250
7 | Facsimile:    (909) 557 1275

8 | Attorneys for Plaintiff
CHRISTOPHER HINZE

9 |

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**04/04/2022 at 08:10:23 PM**
By: Cheryl Clark, Deputy Clerk

10 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 | **IN AND FOR THE COUNTY OF ALAMEDA**

12 | **UNLIMITED JURSIDICTION**

13 |

14 | CHRISTOPHER HINZE,

15 | Plaintiff,

16 | v.

17 | TESLA, INC., a Delaware Corporation; and
DOES 1 through 100, inclusive,

18 |

19 | Defendants.

Case No.    22CV009439

**COMPLAINT FOR DAMAGES FOR PERSONAL INJURY**

1.   Strict Product Liability
2.   Negligence
3.   Failure to Warn
4.   Breach of Warranty

**DEMAND FOR JURY TRIAL**

20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

1
COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1    Plaintiff Christopher Hinze ("Plaintiff"), as an individual, hereby complains and alleges the

2  following causes of action against Defendant Tesla, Inc., a Delaware corporation ("Tesla" or

3  "Defendant"); and Does 1 through 100, inclusive, as follows:

4                            I        **NATURE OF THE ACTION**

5        1.       On June 20, 2020, Plaintiff Christopher Hinze was driving a 2017 Tesla Model S vehicle

6  eastbound on highway I-66 in the State of Virginia while its owner was in the passenger seat. Because

7  Plaintiff was driving the vehicle on an open highway without cross-traffic, Plaintiff activated the

8  vehicle's Autopilot capability. Tesla markets its "Autopilot feature" as "advanced hardware capable of

9  providing Autopilot features, and full self-driving capabilities—through software updates designed to

10 improve functionality over time." According to Tesla, "Autopilot advanced safety and convenience

11 features are designed to assist you with the most burdensome parts of driving," while introducing "new

12 features and improv[ing] existing functionality to make your Tesla safer and more capable all the time."

13 The upshot is that the Autopilot system uses a complex chain of hardware—cameras, radar, sonar—in

14 combination with GPS coordination to keep the vehicle on the road without direction from the driver.

15 While Tesla claims that the auto-pilot feature does not make the vehicle "autonomous," and that the

16 driver must continue to maintain active supervision of the vehicle, Tesla does state that Autopilot feature

17 "enables the automobile, on its own, to steer, accelerate and brake automatically within its lane."

18       2.       While in Autopilot mode and traveling in traffic, the vehicle successfully navigated the

19 interchange from I-66 to I-495 and began travelling northbound on I-495. This included the vehicle

20 autonomously changing lanes in response to the driver's appropriate use of the indicator as well as the

21 vehicle autonomously adjusting its speed in relation to the surrounding traffic. The vehicle maintained

22 its reasonable rate of speed and Plaintiff was actively and consciously maintaining active supervision of

23 the vehicle, including keeping his hands on the steering wheel, which is required in order to keep the

24 Autopilot engaged.

25       3.       After traveling north for several minutes on I-495, Plaintiff and the vehicle reached an

26 area of the freeway near the northbound ramp to enter Route 123. Plaintiff intended to take the ramp

27 interchange and thereafter travel northbound on Route 123. A picture of the route is found directly

28 below. Plaintiff engaged the turn indicator and the vehicle successfully moved under Autopilot into the

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1   exit lane on the far right-hand side of the road. Having moved into the exit lane, the vehicle then began

2   to accelerate, which the Plaintiff reasonably assumed was the vehicle's routine Autopilot response to the

3   prevailing road conditions.



4.      As shown in the pictures above, the Route 123 interchange features a significant curve to

3

1  the east that must be navigated in order to safely complete the interchange. Based on Tesla's

2  representations regarding the Autopilot feature and its performance during the journey so far, Plaintiff

3  reasonably expected that the vehicle would be able to successfully navigate the transition road between

4  the two freeways and proceed with the trip.

5      5.    Unfortunately, there was only a split second at the beginning of the curve in which

6  Plaintiff was able to recognize that the vehicle's Autopilot was not going to reduce the vehicle's speed

7  and proceed safely into the curve. Instead, the vehicle continued to proceed forward against the curve,

8  eventually leaving the road and entering the waste area between the highway and the interchange.

9      6.    Plaintiff has no memory of the vehicle's actual impact, but the automobile then almost

10  immediately came to a halt in a head-on collision at speed into a tree in the waste area between the

11  highway and the interchange. As a result, Plaintiff was rendered unconscious for a brief period; suffered

12  a catastrophic and unstable shattering of his L4 spinal vertebra; a fracture of his L1 vertebra; and chest

13  injuries. Plaintiff was rushed by EMS personnel into emergency surgery for approximately eight hours

14  at the Inova Fairfax hospital in northern Virginia. Surgeons performed a laminectomy to decompress

15  the vertebrae and he underwent a spinal fusion procedure of the L3-L5 vertebrae involving the insertion

16  of screws and supporting plates along his lower spine to stabilize the injury to the L4. His other injuries

17  had to heal of their own accord. Plaintiff spent his immediate hours and first two days in the hospital in

18  the Intensive Care Unit, then spent 3-4 days in the trauma ward and then a further two weeks in in-

19  patient rehabilitative care before being released to care for himself. After Plaintiff's initial hospital stay,

20  he has continued to suffer from back pain, weakness particularly in his right leg, reduced feeling and

21  numbness in both of his lower legs, and significant chest discomfort which a subsequent CT scan has

22  shown to have been fractured. Months of hard work and more than 50 physical therapy sessions have

23  gradually improved Plaintiff's initial physical condition, but he has not returned to his pre-crash

24  condition and continues to feel the considerable physical and emotional effects of the collision to this

25  day.

26      7.    Beginning in September 2014, all Tesla Model S vehicles were manufactured with a

27  camera mounted at the top of the windshield, forward looking radar, and ultrasonic acoustic location

28  sensors that provide the vehicle's computer with a 360-degree view around the car. This equipment

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1   allowed the Model S to detect road signs, lane markings, obstacles, and other vehicles.  Beginning in

2   October 2016, Tesla upgraded this hardware in all new Model S vehicles to include eight surround

3   cameras and twelve ultrasonic sensors.  Tesla has installed similar camera equipment in the Model X,

4   which it has offered for sale to the public since September 2015.  Tesla vehicles, including both the

5   Model X and the Model S, also sport radar and sonar sensors designed to help prevent contact with other

6   vehicles and obstacles on the road.

7        8.     Just as with any other computer, a Tesla vehicle constantly generates data.  Indeed, Tesla

8   collects thousands of data points every day regarding the vehicle's use and downloads each vehicle's

9   data to centralized servers for processing and analysis.  Tesla has also installed an Event Data Recorder

10   ("EDR") in each of its vehicles.  While the data each individual EDR keeps is regularly overwritten

11   under normal conditions, the EDR preserves all data generated by an incident resulting in an air-bag

12   deployment, as occurred during Plaintiff's collision. When such incidents occur, Tesla collects the data

13   the automobile generates, but refuses to give the vehicle's owner the data.  Instead, Tesla withholds the

14   data, providing only a purported "summary," even after a serious crash such as Plaintiff's. In other

15   words, the owner of any Tesla automobile purchases it for many thousands of dollars and drives it in the

16   regular course—generating the data the vehicle's computers are directed to collect and disseminate to

17   Tesla—but Tesla refuses to make that data available to the owner for reasons that it doesn't bother to

18   explain.

19        9.     This is true even as Tesla designs and manufactures automobiles with more and more

20   automated features designed to shift decision-making from driver to automobile.  While fully

21   autonomous driving may still be aspirational, Tesla designs, manufactures, and markets features on the

22   Model S as technologically-advanced, if interim, steps on the road to fully computerized driving.  SAE

23   International, a standard-setting organization for autonomous driving, categories Autopilot as a Level 2,

24   or partial driving, automation.  A Level 2 system still requires the driver to monitor the automation,

25   maintain situational awareness of traffic conditions, understand the limitations of the automation, and be

26   available to intervene and take full control of the vehicle at all times."

27        10.     It is this type of bold and self-assured vision that has made Tesla a technology leader in

28   the automotive market, and Tesla has developed a loyal following among drivers seeking a high-tech

1  alternative to traditional gasoline-powered automobiles. Tesla promises its purchasers not only a cleaner

2  and more environmentally-friendly automobile, but also market-leading technology in autonomous

3  driving, allowing more and more vehicle features making drivers' decisions for them.

4       11.    Of course, autonomous driving is not without its challenges. Decisions drivers once

5  made in real time are now made by engineers and designers who assume responsibility to foresee and

6  anticipate all of the variables vehicles may encounter on any particular trip. Each vehicle's computer

7  systems must be programmed and prepared to anticipate and make decisions consistent with the

8  vehicle's safe operation. When the technology works properly, there is certainly the potential for

9  preventing driver error.

10       12.    But autonomous driving is only as good as the hardware, engineering, and programming

11  of the onboard computers used to execute it. Even the most successful and sophisticated computer

12  companies in history—Microsoft and Apple among them—regularly release computers and software

13  with bugs, glitches, and unanticipated problems that cause their computers to unexpectedly crash,

14  malfunction, or work differently than intended. These bugs are serious enough when located in a

15  stationary box on a user's desk—they are magnified exponentially when a computer controls a half-ton

16  moving machine capable of accelerating from 0 to 60 miles per hour in under 4 seconds. In these

17  circumstances, the consequences of computer "bugs" and "glitches" can be catastrophic, as they were in

18  this case.

19       13.    Because of the trial-and-error nature of the technology, Tesla vehicles "learn" just as

20  other computer systems. These patches and updates are downloaded precisely because Tesla's

21  programming engineers are unable to anticipate all the glitches, bugs, and problems that will arise in the

22  everyday course of driving and must issue necessary corrections so that the system works properly going

23  forward. While questions about Tesla's "Autopilot" technology have been asked for quite some time,

24  they came to a head in 2018, when a Tesla Model X vehicle ran off Highway 101 in Mountain View,

25  California, killing the driver.

26       14.    In that accident, the Tesla vehicle was driving southbound on Highway 101 while

27  approaching a High-Occupancy Vehicle exit lane to State Route 85. The vehicle was intended to

28  continue travelling in the High-Occupancy Vehicle lane on Highway 101, which was the lane directly to

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1  the left of the right-hand transition lane to the Route 85 interchange.  But rather than remain in the
2  proper lane, the SUV moved to left and entered a paved gore area dividing the main travel lanes of US-
3  101 from the State Route 85 exit ramp.  The vehicle struck a damaged and nonoperational crash
4  attenuator at a speed of approximately 71 miles per hour, resulting in the driver's death from blunt-force
5  trauma injuries.  The vehicle's high-voltage battery was also breached in the collision, causing a post-
6  crash fire.

7          15.     Because of the circumstances surrounding the accident, the National Transportation
8  Safety Board undertook a full investigation of the Mountain View crash.  This was not the NTSB's first
9  review of the Tesla auto-pilot programming, having engaged in other reviews of accidents in California
10 and Florida.  After undertaking the investigation, the NTSB concluded that the probable cause of the
11 crash was "the Tesla Autopilot system steering the sport utility vehicle into a highway gore area due to
12 system limitations," after which the driver failed to respond "due to distraction likely from a cell phone
13 game application and overreliance on the Autopilot partial driving automation system."  Those
14 limitations included an inability to detect the crash attenuator that caused the accident.  The NTSB also
15 noted Tesla's "ineffective monitoring of driver engagement, which facilitated the driver's complacency
16 and inattentiveness."  It also concluded that for driving automation systems to be safely employed they
17 must be able to "effectively detect and respond to potential hazards, including roadside traffic safety
18 hardware, and be able to execute forward collision avoidance at high speeds."  Instead, the Tesla veered
19 off the road "due to limitations of the Tesla Autopilot vision system's processing software to accurately
20 maintain the appropriate lane of travel."

21         16.     Conditions for the crash here were better than those involved in the Mountain View
22 crash.  Plaintiff was driving the automobile attentively and responsibly, on alert for potential automation
23 errors.  But at the entered speed, there was simply not enough time to correct the vehicle before it left
24 the highway and got into the crash.  There is no excuse for the Autopilot to have failed.  Nevertheless,
25 just as in California, the Autopilot's limitations were such here that the automobile could not accurately
26 maintain the appropriate lane of travel.

27                              **II      JURISDICTION AND VENUE**
28         17.     This Court has subject matter jurisdiction over this action pursuant to California

7

1 | Constitution, Article VI, §10 and under California Code of Civil Procedure Section 410.10.

2 |     18.    This Court has jurisdiction over Defendant because their principal places of business are
3 | located in Palo Alto and Fremont, California. Further, Defendant Tesla purposefully availed themselves
4 | of the California market through continuous and systematic business activity and the causes of action
5 | alleged herein arise from said activity, so as to render the exercise of jurisdiction over it by the
6 | California courts consistent with the traditional notions of fair play and substantial justice.

7 |     19.    Venue is proper in this County because the subject vehicle was manufactured in this
8 | county and a substantial part of the events, acts, omissions, and transactions, complain of herein
9 | occurred in this County.

10 | **III    PARTIES**

11 |     20.    Plaintiff Christopher Hinze is an individual who was at all times relevant herein residing
12 | in Washington, District of Columbia. On June 20, 2020, Plaintiff, an experienced driver, was driving a
13 | Model S while using the vehicle's "Autopilot" feature when it experienced an operational error that
14 | caused the vehicle to leave the road while travelling northbound on the I-66 at the Route 123
15 | interchange ramp in the State of Virginia. The error caused the vehicle to crash and cause serious injury
16 | to Plaintiff, including a broken and compressed vertebra.

17 |     21.    The vehicle driven by Plaintiff was a model year 2017 Tesla Model S, bearing vehicle
18 | identification number 5YJSA1E19GF173279 and vehicle plate number UJM5559, (hereinafter the
19 | "subject vehicle").

20 |     22.    Defendant Tesla, Inc., is, and at all times herein relevant was, a Delaware corporation,
21 | with one of its principal places of business in Fremont, California, where it manufactures its vehicles.
22 | Defendant Tesla's factory in Alameda County employs more than 10,000 people with 5.3 million square
23 | feet of manufacturing and office space on 370 acres of land. The vehicle that is the subject of this
24 | litigation was manufactured in Fremont, Alameda County, California. TESLA is authorized to do, has
25 | regularly done, and is doing, business in the State of California, and has systematically conducted
26 | business on a regular basis in the State of California, under and by virtue of the laws of the State of
27 | California. Furthermore, at the time of the subject incident, Defendant Tesla, Inc.'s headquarters were
28 | located in the State of California.

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

23.   Tesla manufactured, sold, and warranted the Model S involved in the alleged accident. Tesla and/or its agents, divisions, or subsidiaries designed, manufactured, and installed all the systems in the Model S, including all systems responsible for autonomous vehicle control, acceleration, and braking.

24.   The true names and capacities of the Defendants sued herein as Does 1 through 100, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become true names and capacities of the Defendants designated herein as DOES when such identities become known.

25.   Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

## IV     FACTUAL ALLEGATIONS

### A.     The Autopilot System's History

26.   Tesla first released the hardware for its Autopilot system in September 2014, including it on all Model S and Model X vehicles it sold from that point forward. The first version of the hardware used one front facing camera supported by a radar system used to track the leading vehicle's speed for adaptive cruise control. The vehicle also included 12 sonar sensors to detect nearby obstacles and traffic for parking and lane changes. A computer processes the information gathered from these sources and tells the car what to do.

27.   In October 2016, Tesla upgraded the system to use an eight-camera configuration covering all angles of the car. Tesla also upgraded the vehicle's computing power to compensate for the additional data produced by the new cameras. In March 2019, Tesla again upgraded the system, this

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1  time claiming that the hardware had all the necessary components for full autonomous driving, even if
2  the software would not support such driving yet. This latest upgrade is a computer upgrade (the sensors,
3  radar, and sonar capabilities remain the same), so older vehicles that have the full hardware package can
4  upgrade to obtain this capacity. Tesla CEO Elon Musk has not been shy about his opinion regarding the
5  Tesla's Autopilot capabilities, recently stating at an AI-themed conference that not only would
6  "essentially complete autonomy" be achieved in driving, but that "this can be accomplished with the
7  hardware that is in Tesla today."

8    28.    The dark side of the system, however, is that Tesla's Autopilot system is at best a work in
9  progress, and it has a history of dangerous and even fatal consequences for its users.

10   29.    In May 2016, a 2015 Tesla Model S just east of Williston, Florida, struck a semi-truck
11 while the truck was making a left turn across the two eastbound lanes on which the Tesla was driving.
12 With the Autopilot system operating, the Tesla did not recognize the truck turning in front of it and it
13 struck the right side of the truck trailer, crossed underneath it, and then went off the right side of the
14 road. The Tesla driver died in the crash. An NTSB investigation later found that the accident was the
15 result of the truck driver's failure to yield right of way in combination with the "car driver's inattention
16 due to overreliance on vehicle automation, which resulted in the car driver's lack of reaction to the
17 presence of the truck." The NTSB found Tesla responsible for the Autopilot's "operational design,"
18 which permitted the driver's "prolonged disengagement from the driving task and his use of the
19 automation in ways inconsistent with guidance and warnings from the manufacturer."

20   30.    In January 2018, a 2014 Tesla Model S was traveling behind another vehicle in the HOV
21 lane of the southbound 405 in Culver City, California. Because of an earlier collision, a highway patrol
22 vehicle was parked on the left shoulder, with a fire department truck parked diagonally across the lane.
23 The Tesla vehicle failed to recognize the fire truck in front of it, accelerated, and struck the rear of the
24 fire truck at a recorded speed of 31 miles per hour. Fortunately, the Tesla driver was not injured, but was
25 using the Autopilot system when the accident occurred. As with the Williston accident, the NTSB again
26 concluded that the cause of the accident was overreliance on the Vehicle's automated driving functions
27 and the Autopilot design which permits drivers to disengage from the task of driving in the first place.

28   31.    In March 2019, a 2018 Tesla Model 3 was traveling south on Highway 441 in Palm

10

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1  Beach County, Florida, when a tractor trailer attempted to cross the highway by turning left so it could
2  access the northbound lanes. The southbound driving Tesla struck the left side of the semitrailer and
3  cross underneath it. As in Williston, the driver died in the crash. The NTSB investigated this accident as
4  well, and again pointed to the car driver's inattention combined with the company's failure to limit the
5  use of the system to the conditions for which it was designed. In other words, the automobile can be
6  operated in a manner that even Tesla itself does not recommend as safe.

7      32.      In April 2019, a Tesla Model S operating on Autopilot was driving down a road in Key
8  Largo, Florida when the driver, who was on the phone making plane reservations, dropped the phone.
9  While he was looking for the phone to complete his call, he failed to notice that the road he was
10 traveling on was ending. He looked up just in time to see a black truck parked just in front of the Tesla,
11 but not in time to stop the vehicle. Indeed, the vehicle accelerated from 44 mph 60 mph in the few
12 seconds before the crash. The Tesla made contact with the black truck—a Chevrolet Suburban—and a
13 college student standing next to the driver's side door. The college student was killed by the impact.
14 This accident was particularly noteworthy because it highlighted Tesla's insistence on permitting its
15 vehicles to be driven in Autopilot mode on local roads. Most other automakers with similar systems,
16 such as GM and Ford, restrict the use of their systems to divided highways where there are no stop
17 signs, traffic lights, or pedestrians.

18      33.      In May 2021, a Tesla Model 3 struck an overturned semi on a freeway near the city of
19 Fontana, in the Inland Empire portion of California, killing the driver. While the investigation into the
20 crash continues to proceed, investigators discovered social media videos of the driver—a confirmed
21 Tesla enthusiast—riding in the vehicle without his hands on the wheel or his foot on the pedal. There
22 has been no final determination regarding the causes of the crash, but a preliminary investigation
23 determined that the Autopilot system was engaged before the accident occurred.

24      34.      Even more recently, a Tesla hit a parked police car on Interstate 4 near Orlando, Florida.
25 No one was seriously injured in the crash, though the Tesla came perilously close to hitting the state
26 trooper that had left the police car to assist another driver that had broken down on the highway. The
27 investigation is not complete, but the driver stated that the Tesla was in Autopilot mode. This is the
28 latest in nearly a dozen accidents where Teslas have hit police cars, ambulances, or other emergency

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1 │ vehicles responding to traffic accidents. The NHTSA recently opened an investigation into these
2 │ accidents to determine why the Autopilot feature continues to have difficulty responding to emergency
3 │ vehicles.

4 │      35.    Autopilot problems of every sort continue to be reported the world over. One report
5 │ identifies a stretch of road in the Yosemite Valley that confuses the Autopilot and causes Tesla vehicles
6 │ to leave the road. At this point, the road splits, with one lane proceeding in a curve to the left and the
7 │ other lane proceeding straight on to the right. A picture of the particular spot in the road is below:



20 │     36.    There are reports of at least five accidents involving Tesla automobiles at this fork in the
21 │ road alone, and local Tesla owners regularly report experiencing problems with navigation in this
22 │ particular area.

23 │     37.    These are just a few of the many accidents that have occurred with the Autopilot system
24 │ operational on the vehicle at the time of the accident. Reports are that perhaps more than 20 deaths are
25 │ attributable to accidents occurring with the Tesla Autopilot system operating. One researcher
26 │ determined that BMW and Audi automobiles had a combined 9 driver fatalities in nearly 900,000
27 │ vehicle years of driving. Tesla had 11 driver fatalities as of 265,000 vehicle years of driving, and there
28 │ are significant concerns about the quality of the data Tesla is keeping. Insurers are also reporting that

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1   the Model S in particular has higher claim frequencies and is costlier to fix than large luxury cars in its
2   class. Unlike other electric vehicles that had lower claim frequencies and severities than their gas-
3   powered counterparts, the Model S's claim frequency was 37 percent higher than its comparison group,
4   its claim severity 64 percent higher, and its overall losses 124 percent higher.

5       38.     Tesla's Autopilot programming continues to suffer from a dangerous defect, in that its
6   programming does not permit the driver to safely drive the vehicle even under the terms described in
7   Tesla's own materials. That is, even under circumstances where a driver is highly attentive, actively
8   managing the vehicle, and in control, the vehicle can still be guided into danger by the Autopilot
9   programming. As a result of the defect, the Model S involved in this case caused serious and life
10  changing injuries.

11                          **V      CAUSES OF ACTION**
12                          **FIRST CAUSE OF ACTION**
13                  **PRODUCTS LIABILITY – STRICT LIABILITY**
14          **(Against Defendant Tesla, Inc., and Does 1 through 100, inclusive)**

15      39.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though
16  fully set forth at length herein.

17      40.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned,
18  Defendants TESLA and DOES 1 through 100, inclusive, and each of them, were the manufacturers,
19  designers, developers, processors, producers, assemblers, builders, testers, inspectors, installers,
20  equippers, endorsers, exporters, wholesalers, retailers, lessors, renters, sellers, lessors, modifiers,
21  repairers, providers and otherwise distributors of the subject vehicle.

22      41.     Plaintiff is informed and believes and thereon alleges that the model year 2017 Tesla
23  Model S, bearing vehicle identification number 5YJSA1E19GF173279, vehicle plate number UJM5559,
24  as previously described, was defective at the time of its manufacture, design, development, production,
25  assembly, building, testing, inspection, installation, equipping, endorsement, exportation, importation,
26  wholesaling, retailing, selling, renting, leasing, modification, repair and entrustment, and that it failed to
27  meet the reasonable expectations of safety of the class of persons of which Plaintiff was a member as
28  operators of a high-end luxury sedan such as the subject vehicle and that any benefits derived from the

                                        13

1   design of said vehicle were substantially outweighed by the risk of harm inherent in said design, in that,

2   and not by way of limitation, despite the availability to Defendants of safer alternative designs, said

3   vehicle presented a substantial and unreasonable risk of injury to the users of said vehicle or those in the

4   vicinity of its use.

5       42.     Specifically, Plaintiff is informed and believes that said vehicle was defective in its

6   design, construction, assembly and manufacture and dangerous to life and limb of the users and

7   occupants thereof, in that, among other things and not by way of limitation, said vehicle was suffers

8   from a dangerous defect, in that its Autopilot systems do not permit the driver to safely drive the vehicle

9   even under the terms described in Tesla's own materials. That is, even under circumstances where a

10  driver is highly attentive, actively managing the vehicle, and in control, the vehicle can still be guided

11  into danger by the Autopilot programming. As a result of the defect, the Model S involved in this case

12  caused serious injuries. The aforementioned defects created a substantial danger which was unknown to

13  Plaintiffs and the public in general, and would not be recognized by the ordinary user, and said

14  Defendants failed to give adequate warning of such danger.

15      43.     On June 20, 2020, Hinze was injured while driving in a Tesla vehicle as previously

16  alleged. The vehicle was equipped with Tesla's proprietary Autopilot hardware and software

17  capabilities.

18      44.     Tesla knew that Hinze would operate the automobile without inspecting it for defects.

19  Hinze was using the product in the manner intended by Tesla, including paying attention to the road and

20  monitoring the vehicle's automatic operations.

21      45.     The foregoing defects in the design, manufacture, configuration and assembly of the

22  subject vehicle were a substantial factor in causing severe personal injuries to Plaintiff Hinze

23                      **SECOND CAUSE OF ACTION**

24                           **NEGLIGENCE**

25          **(Against Defendant Tesla, Inc., and Does 1 through 100, inclusive)**

26      46.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though

27  fully set forth at length herein.

28      47.     At all times herein mentioned, Defendant Tesla, Inc., and Does 1 through 100, inclusive,

---

14

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1  and each of them, designed, manufactured, assembled, analyzed, recommended, merchandised,

2  advertised, promoted, distributed, supplied, and sold to distributors and retailers for sale, the subject

3  vehicle and/or its component parts.

4      48.     Defendant Tesla, Inc., and Does 1 through 100, inclusive, and each of them, owed

5  Plaintiff a duty to exercise reasonable care in the design, testing, manufacture, assembly, sale,

6  distribution and servicing of the subject vehicle, including a duty to ensure that the subject vehicle did

7  not cause Plaintiff, other users, bystanders, or the public, unnecessary injuries or deaths.

8      49.     Said Defendants, and each of them, breached their duty to Plaintiff thereby causing the

9  injuries and damages as described herein. Said Defendants, and each of them, knew or should have

10  known that the subject vehicle is defectively designed and/or manufactured and inherently dangerous

11  and was therefore prone to failure under normal driving conditions, potentially causing injuries and/or

12  deaths, in that its Autopilot systems do not permit the driver to safely drive the vehicle even under the

13  terms described in Tesla's own materials. That is, even under circumstances where a driver is highly

14  attentive, actively managing the vehicle, and in control, the vehicle can still be guided into danger by the

15  Autopilot programming. Said Defendants, and each of them, acted unreasonably acted unreasonably in

16  designing, manufacturing and marketing products which presented a substantial and unreasonable risk of

17  injury to vehicle occupants, including Plaintiff Hinze.

18      50.     The aforementioned negligent acts and omissions of Defendant Tesla, Inc., and Does 1

19  through 100, inclusive, and each of them were the direct and proximate cause of Plaintiff's injuries.

20      51.     Plaintiff is therefore entitled to damages in an amount to be proven at trial, together with

21  interest thereon and costs.

22                                  **COUNT III**

23                              **FAILURE TO WARN**

24          **(Against Defendant Tesla, Inc., and Does 1 through 100, inclusive)**

25      52.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though

26  fully set forth at length herein.

27      53.     Defendant Tesla, Inc., and Does 1 through 100, inclusive, and each of them, knew that

28  the subject vehicle, and its component parts, would be purchased and used without inspection for defects

                                        15

1 | in the design of the vehicle.

2 |     54.    The subject vehicle was defective when it left Defendant Tesla's control.

3 |     55.    Tesla knew or should have known of the substantial dangers involved in the reasonably
4 | foreseeable use of these vehicles, whose defective design, manufacturing, and lack of sufficient
5 | warnings caused them to them to be unreasonably dangerous in that its Autopilot systems do not permit
6 | the driver to safely drive the vehicle even under the terms described in Tesla's own materials. That is,
7 | even under circumstances where a driver is highly attentive, actively managing the vehicle, and in
8 | control, the vehicle can still be guided into danger by the Autopilot programming.

9 |     56.    Tesla failed to adequately warn of the substantial dangers known or knowable at the time
10 | of the defective vehicles' design, manufacture, and distribution.

11 |     57.    Tesla failed to provide adequate warnings, instructions, guidelines, or admonitions to
12 | members of the consuming public, including Plaintiff, of the defects, which Tesla knew or in the
13 | exercise of reasonable care should have known, to have existed in the subject vehicle, and its component
14 | parts.

15 |     58.    Tesla knew that these substantial dangers are not readily recognizable to an ordinary
16 | consumer and that consumers would purchase and use these products without inspection.

17 |     59.    At the time of Plaintiff's injuries, the subject vehicle was being used in the manner
18 | intended by Tesla, and in a manner that was reasonably foreseeable by Tesla as involving substantial
19 | danger that was not readily apparent to its users.

20 |     60.    Plaintiff's injuries were the legal and proximate result of the actions and inactions of
21 | Tesla, who owed a duty to Plaintiff in designing, manufacturing, warning about, and distributing the
22 | subject vehicle.

23 |                              **COUNT IV**

24 |                         **BREACH OF WARRANTY**

25 |        **(Against Defendant Tesla, Inc., and Does 1 through 100, inclusive)**

26 |     61.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though
27 | fully set forth at length herein.

28 |     62.    At all times herein mentioned, Defendants TESLA, INC. and DOES 1 through 100,

16

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1   inclusive, designed, developed, processed, repaired, inspected, represented, tested, distributed, sold,

2   consigned, delivered, maintained and operated for purpose of sale and distribution, said vehicle for use

3   by the general public.

4         63.    Plaintiff is informed and believes, and based upon such information and belief alleges,

5   that at the time and place of said sale, delivery, distribution, repair, consignment, maintenance, or

6   operation of said vehicle, said Defendants expressly and impliedly warranted to each buyer and user and

7   to all persons reasonably expected to be in the immediate vicinity of said vehicle during use in any

8   manner, that said vehicle was reasonably fit and safe for its intended purposes, and that said vehicle was

9   accordingly of merchantable quality throughout.

10        64.    At the time and place of said sale, delivery, distribution or supply, said vehicle was not

11  reasonably fit and safe for its intended use by buyers, users or persons reasonably anticipated to be in the

12  vicinity of the use of said products, including Plaintiff, and were therefore not of merchantable quality

13  and constituted extreme danger and hazard to persons using or in the vicinity of said products.

14        65.    As a result of said breaches of warranty, both express and implied, Plaintiff Hinze

15  suffered severe personal injuries.

16                     **VI     PRAYER FOR RELIEF**

17      WHEREFORE, Plaintiff respectfully request that this Court:

18      a.    an award of damages compensating Plaintiff for his injuries and past, present and future

19             economic and non-economic damages in amounts to be proven at trial; including but not

20             limited to special damages for medical expenses, lost wages, and for his general damages for

21             pain, suffering, embarrassment, emotional distress, and disability;

22      b.    award all actual, general, special, incidental, statutory, and consequential damages and

23             restitution to which Plaintiff is entitled;

24  //

25  //

26

27

28

COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

1     c.     award pre-judgment and post-judgment interest on such monetary relief; and

2     d.     grant such further relief that this Court deems appropriate.

3

4   DATED: April 4, 2022                              Respectfully submitted,

5                                                     MCCUNE WRIGHT AREVALO, LLP

6
                                       By: _____
7                                          David C. Wright, State Bar No. 177468

8                                          Attorneys for Plaintiff CHRISTOPHER HINZE

9

10                          **DEMAND FOR JURY TRIAL**

11          PLAINTIFF CHRISTOPHER HINZE demands a jury trial with respect to all issues

12  triable of right by jury.

13  DATED: April 4, 2022                              Respectfully submitted,

14                                                    MCCUNE WRIGHT AREVALO, LLP

15
                                       By: _____
16                                         David C. Wright, State Bar No. 177468

17                                         Attorneys for Plaintiff CHRISTOPHER HINZE

18

19

20

21

22

23

24

25

26

27

28

                                          18
COMPLAINT FOR DAMAGES FOR PERSONAL INJURY

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br><br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>**04/04/2022**<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Cheryl Clark_ Deputy<br>C. Clark |
| PLAINTIFF(S):<br>Christopher Hinze | |
| DEFENDANT(S):<br>Tesla, Inc. | |
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>22CV009439 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

ASSIGNED JUDGE: **Somnath Raj Chatterjee**
DEPARTMENT:    517
LOCATION:      Hayward Hall of Justice
               24405 Amador Street, Hayward, CA 94544
PHONE NUMBER:  (510) 690-2726
FAX NUMBER:
EMAIL ADDRESS: Dept517@alameda.courts.ca.gov

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 101.3)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ACSC (Rev. 10/21)

**ASSIGNED FOR ALL PURPOSES TO**
JUDGE Somnath Raj Chatterjee
DEPARTMENT 517

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference.  The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days."  The court's website contains this form and other ADR information.  If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.


Chad Finke, Executive Officer / Clerk of the Court


By        *Cheryl Clark*

C. Clark, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| David C. Wright          SBN: 132124<br>MCCUNE WRIGHT AREVALO LLP<br>3281 E. Guasti Road, Suite 100, Ontario, California 91761<br>TELEPHONE NO.909-557-1250   FAX NO. *(Optional):* 909-557-1275<br>E-MAIL ADDRESS:dcw@mccunewright.com<br>ATTORNEY FOR *(Name):*Christopher Hinze | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>04/04/2022 at 08:10:23 PM<br>By: Cheryl Clark, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS: 24405 Amador Street
CITY AND ZIP CODE: Hayward, 94544
BRANCH NAME: Hayward Hall of Justice

CASE NAME: Christopher Hinze vs. Tesla, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited    [ ] Limited<br>(Amount       (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 22CV009439<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [X] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) |     condemnation (14) |     above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) |     types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more
      issues that will be time consuming to resolve       courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence       court
                                 f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* 4, Product Liability, Negligence, Failure to Warn, Breach of Warranty.
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date:
David C. Wright                  ▶       *DCW*
_____          _____
(TYPE OR PRINT NAME)                     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

COURTHOUSE ADDRESS:
Hayward Hall of Justice
24405 Amador Street, Hayward, CA 94544

PLAINTIFF:
Christopher Hinze

DEFENDANT:
Tesla, Inc.

## NOTICE OF CASE MANAGEMENT CONFERENCE

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda

04/07/2022

Clad Fluke, Executive Officer / Clerk of the Court

By: _Molly_ _____ Deputy
M. Kautz

CASE NUMBER:
22CV009439

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

> Date: 08/11/2022   Time: 1:30 PM   Dept.: 517
> Location: Hayward Hall of Justice
> 24405 Amador Street, Hayward, CA 94544

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer,** in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA CIV-100 [Rev. 10/2021]

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/07/2022<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Melly Johnson_ Deputy<br>M. Kautz |
| PLAINTIFF/PETITIONER:<br>Christopher Hinze | |
| DEFENDANT/RESPONDENT:<br>Tesla, Inc. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CV009439 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

David Wright
McCune Wright Arevalo, LLP
3281 E. Guasti Road Suite 100
Ontario, CA 91761

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/07/2022                    By:

_Melly Johnson_

M. Kautz, Deputy Clerk

**CERTIFICATE OF MAILING**